## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**MICHAEL SCRIVEN,**

**Plaintiff,**

**v.**                                          Case No. 5:20-CV-03110-JAR-KGG

**DEPUTY CORBY, et al.**

**Defendants.**

## MEMORANDUM AND ORDER

Plaintiff Michael Scriven, a detainee at the Sedgwick County Adult Detention Facility ("SCADF"), brings this action against county employees Harold Stopp, D.O., Nurse Ryan, Deputy Corby, Deputy McGonnigil, Sergeant Tucker, Sergeant Hayes, and Deputy Simonis in their official and individual capacities, alleging that Defendants violated his civil rights through the excessive use of force, failure to protect him from harm, and deliberate indifference to his serious medical needs.  This matter is now before the Court on six motions: (1) Defendant Harold Stopp, D.O.'s Motion to Dismiss (Doc. 30); (2) Defendant Nurse Ryan's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 36); (3) Plaintiff's Motion to Dismiss (Doc. 39), filed in support of Defendant Ryan's motion to dismiss; (4) Motion to Dismiss (Doc. 40) by Defendants Corby, McGonnigil, Tucker, Hayes, and Simonis; (5) Motion to Strike Plaintiff's Surreply (Doc. 59) filed by Defendants Corby, McGonnigil, Tucker, Hayes, and Simonis; and (6) Plaintiff's Motion to Exclude Evidence (Doc. 51).  The motions are fully briefed, and the Court is prepared to rule.

For the reasons set forth in detail below, Plaintiff's motion to dismiss Defendant Ryan from this action is granted, and Defendant Ryan's motion to dismiss is denied as moot. Defendants' motion to strike plaintiff's surreply is denied, and Plaintiff's motion to exclude

evidence is denied.  The motion to dismiss filed by Defendants Corby, McGonnigil, Tucker, Hayes, and Simonis is denied, but Count IV of Plaintiff's Amended Complained is dismissed as duplicative of Count II.  Finally, Defendant Stopp's motion to dismiss is granted.

## I.    Legal Standard

Defendants move to dismiss based on Plaintiff's failure to exhaust his administrative remedies, Plaintiff's failure to state a claim, and/or the defense of qualified immunity from suit. All Defendants seek dismissal on the basis that Plaintiff failed to exhaust his administrative remedies before bringing suit as required by the Prison Litigation Reform Act ("PLRA"). Defendants Corby, McGonnigil, Tucker, Hayes, and Simonis contend that dismissal for failure to exhaust deprives this Court of subject matter jurisdiction and that dismissal is therefore proper under Fed. R. Civ. P. 12(b)(1).  Defendant Stopp does not specify the rule on which he relies with respect to his exhaustion arguments, whereas Defendant Ryan moves under Rule Fed. R. Civ. P. 12(b)(6).

"In the Tenth Circuit, . . . plaintiff's failure to exhaust is not jurisdictional and a motion based upon failure to exhaust is properly brought under Rule 12(b)(6) for failure to state a claim—not under 12(b)(1) for lack of subject matter jurisdiction."[1]  Thus, Defendants' motions to dismiss for failure to exhaust must be considered under Rule 12(b)(6), as must their remaining arguments based on failure to state a claim and the defense of qualified immunity.

To survive a motion to dismiss brought under Rule 12(b)(6), "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual

---

[1] *Echtinaw v. Lappin*, No. 08-3011-KHV, 2009 WL 604131, at *5 (D. Kan. Mar. 9, 2009) (first citing *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1208 (10th Cir. 2003), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007), and then citing *Canady v. Werholtz*, No. 04-2083-GTV, 2004 WL 1212050, at *2 (D. Kan. June 1, 2004)); *see Johnson v. Aucoin*, No. 18-cv-00194-RBJ-NRN, 2020 WL 5016912, at *2 (D. Colo. Aug. 24, 2020) (stating that while exhaustion of remedies is mandatory, "a plaintiff's failure to exhaust administrative remedies does not divest the Court of subject matter jurisdiction" (citation omitted)).

support for *these* claims."[2]  The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer possibility."[3]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[4]  Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[5]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all of the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[6] Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[7]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[8]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[9]

---

[2] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[5] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

[6] *Id.* (quoting *Twombly*, 550 U.S. at 555).

[7] *Id.* at 678−79.

[8] *Id.* at 679.

[9] *Id.* at 678.

If matters outside the complaint are considered, the Court generally must convert a Rule 12(b)(6) motion to a Rule 56 motion for summary judgment.[10]

Finally, because Plaintiff proceeds *pro se*, some additional considerations frame the Court's analysis. The Court must construe Plaintiff's pleadings liberally and apply a less stringent standard than that which applies to attorneys.[11] "Nevertheless, [Plaintiff] bears 'the burden of alleging sufficient facts on which a recognized legal claim could be based.'"[12] The Court may not provide "additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[13] Additionally, a *pro se* litigant is not excused from complying with the rules of the court and is subject to the consequences of noncompliance.[14]

## II. Procedural and Factual Background

Plaintiff's original Complaint, filed on April 13, 2020, alleged claims against the Sedgwick County Board of Commissioners, the Sedgwick County Jail, Deputy Corby, Deputy McGonnigil, Deputy Simonis, Sergeant Tucker, Sergeant Hayes, and Wellpath.[15] On screening pursuant to 28 U.S.C. §1915A—which requires the court to review a prisoner's case against a governmental entity or employee for frivolousness, maliciousness, or failure to state a claim[16]— United States Senior District Judge Sam A. Crow found that Plaintiff's claims against the

---

[10] Fed. R. Civ. P. 12(d); *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Prager v. LaFaver*, 180 F.3d 1185, 1188 (10th Cir. 1999)).

[11] *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997) (citation omitted).

[12] *Requena v. Roberts*, 893 F.3d 1195, 1205 (10th Cir. 2018) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

[13] *Whitney*, 113 F.3d at 1173–74 (citing *Hall*, 935 F.2d at 1110).

[14] *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)).

[15] Doc. 1.

[16] 28 U.S.C. §1915A(b).

Sedgwick County Board of Commissioners, the Sedgwick County Jail, Deputy Corby, and Wellpath were subject to dismissal for failure to state a claim.[17]  Judge Crow directed Plaintiff to show cause why those defendants should not be dismissed or, in the alternative, to file an amended complaint correcting the pleading deficiencies noted in Judge Crow's Order.[18]  Plaintiff filed an Amended Complaint on November 5, 2020, dropping his claims against the Sedgwick County Board of Commissioners, the Sedgwick County Jail, and Wellpath, but restating his claims against Defendant Corby and adding claims against Defendants Stopp and Ryan.[19]  Plaintiff's Amended Complaint is now the operative complaint in this case, and the following facts are drawn from that pleading and assumed true for the purposes of this ruling. [20]

Plaintiff is, and was at the time of the events in question, detained at the SCADF in Wichita, Kansas.  He has a number of physical disabilities that have required medical implants, including a prosthetic right hip and right femur; a prosthetic pelvis with over twenty screws in each acetabulum; screws in the left sacroiliac joint; and pins and plates in the right ribs.  Plaintiff also has a traumatic brain injury.  Defendant Stopp was employed as a doctor at the SCADF, and Defendant Ryan as a nurse.  Defendants Deputy Corby, Deputy McGonnigil, Sergeant Tucker, Sergeant Hayes, and Deputy Simonis were all employed at the SCADF in the roles indicated by their titles.

As a result of his disabilities, Plaintiff was placed in an "ADA cell" in Pod 18 sometime in April 2019.  On the morning of April 20, 2019, Deputy Corby was in charge of Pod 18.  She and Plaintiff had a disagreement about where Plaintiff should get undressed prior to showering.

---

[17] Doc. 8 at 7−12.

[18] *Id.* at 11−12.

[19] Doc. 18.

[20] *See* Doc. 19 (November 30, 2020 Order of Judge Crow stating that "Doc. No. 18 shall be redocketed as . . . the operative complaint in his case").

As Plaintiff tried to explain his position, Corby made fun of him about his disabilities and harassed him over the cell intercom.  Corby then put Plaintiff in a 24-hour lockdown in his cell. Plaintiff requested a sergeant, and Sergeant Tucker joined Corby on the intercom.  Corby and Tucker continued to harass Plaintiff over the intercom and extended his lockdown.

Corby then let Sergeant Tucker into Pod 18.  Tucker went to Plaintiff's cell window and, within Corby's view, laughed at and provoked Plaintiff further.  At some point, Corby also let Deputy McGonnigil into the pod, and McGonnigil joined Tucker at Plaintiff's cell.  Tucker told Plaintiff that he was going to send McGonnigil in, which made Plaintiff feel threatened.  Tucker put his key in the cell door and asked Plaintiff if he was ready.  To avoid what he feared would happen if McGonnigil came into his cell, Plaintiff asked to be taken to the SCADF's medical clinic to have his right hip examined.

Tucker opened Plaintiff's cell and told Plaintiff to "cuff up."  Although Plaintiff was compliant as McGonnigil placed him in handcuffs, the handcuffs were too tight and caused Plaintiff severe pain.  Before Plaintiff could tell McGonnigil that he was in pain, McGonnigil began cutting into Plaintiff's hands and wrists with his fingernails and placed Plaintiff's wrists in a "gooseneck" hold.  Plaintiff's wounds from this hold bled for two weeks afterward.

As McGonnigil removed him from Pod 18, Plaintiff's screams for help were ignored— including by Corby, who was watching.  Plaintiff was taken to a fourteen-step staircase known as the "sweet spot" among SCADF staff because it is out of view.  By this time, Deputy Simonis was also present in addition to McGonnigil and Tucker; McGonnigil was on Plaintiff's right and Simonis on Plaintiff's left as they descended the stairs.  After Plaintiff was led down two to three steps, McGonnigil kicked his left knee out, causing him to fall and hit the stairs.  The deputies picked Plaintiff up but, after a few more steps, McGonnigil kicked his left knee out again,

causing him to fall a second time.  Tucker, who was present to supervise, continued giving verbal instructions to McGonnigil and Simonis but did nothing to stop their behavior.  Plaintiff's screams for help were again ignored.  By the time he reached the bottom of the staircase, Plaintiff could no longer stand or walk, and his back was severely injured.  A wheelchair was brought for Plaintiff, and Sergeant Hayes joined the group.  Hayes stood against a wall with his arms crossed, smiling at Plaintiff but saying nothing.  Hayes also did not respond to Plaintiff's screams for help.

Plaintiff was placed in the wheelchair and taken to the medical clinic.  Once there, Plaintiff was asked questions to assess his condition, but was not permitted to answer them. Instead, Tucker provided false answers to the questions to avoid Plaintiff reporting to the nurse what had happened.  Plaintiff did not see a doctor or receive medical care.  Instead, he was returned to Pod 18 in a wheelchair and handcuffs, all the while screaming that he was in pain, that his "hardware was wrong," and asking for a doctor.[21]  Corby witnessed Plaintiff being returned to the pod in a wheelchair, whereas he had left the pod walking.

After Corby opened the pod door, Plaintiff was forcefully dragged into the pod and then to his cell, where McGonnigil and Simonis lifted him onto the bunk and placed him face down on his knees with his hands handcuffed behind his back.  Next, McGonnigil and Simonis lifted Plaintiff by his ankles and his handcuffed wrists and dropped him to the floor from a height of four feet, then proceeded to strike him in the ribs, neck, and back with their knees as Plaintiff screamed for help.  Tucker, Hayes, and Corby all watched these events take place.  Plaintiff was then locked in his cell for four days.

---

[21] Doc. 18 at 9.

Plaintiff did not see Dr. Stopp until May 31, 2019, weeks after the foregoing events.  And although Dr. Stopp and Nurse Ryan knew of an injury to Plaintiff's back as of May 31, 2019, they acted as though Plaintiff was unharmed.  Dr. Stopp and Nurse Ryan lied to Plaintiff for nearly six months about the fact that he had fractured areas in his back.  In fact, each time Plaintiff saw Dr. Stopp and/or Nurse Ryan for treatment, they put in requests for imaging on the wrong part of his body to avoid Plaintiff learning about his injuries.  Although the timing is not entirely clear from the Amended Complaint, it appears that Plaintiff was finally sent to see a different doctor about six months from the date of his first visit with Dr. Stopp.  Plaintiff's efforts to obtain care from Dr. Stopp were unsuccessful, which has left him in continuing physical pain.

## III.   Discussion

Plaintiff invokes 42 U.S.C. § 1983 as the basis for his claims arising under the United States Constitution.  Section 1983 provides a cause of action for the deprivation of federal rights by any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory."  The statute "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"[22]  Plaintiff alleges claims against Defendants McGonnigil, Tucker, and Hayes for excessive use of force; and against Defendants Corby, McGonnigil, Tucker, Hayes, and Simonis for failure to protect; and against all Defendants for deliberate indifference to his serious medical needs.  The Court addresses each of the pending motions to dismiss in turn.

---

[22] *Albright v. Oliver*, 510 U.S. 266, 270 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979)).

## A.   Motions to Dismiss Defendant Ryan

Plaintiff does not oppose Defendant Ryan's motion to dismiss.  In fact, Plaintiff requests

that Defendant Ryan be dismissed from this action, stating in his own "Motion to Dismiss" that

he "has carefully considered Nurse Ryan's involvement in Dr. Stopp's deliberate indifference

and has determined that although she could have taken some intervening action in Dr. Stopp's

behavior, it does not rise to the level of deliberate indifference on her part and she cannot justly

be held responsible."[23]  Accordingly, Plaintiff's motion to dismiss Defendant Ryan is granted,

and Plaintiff's claims against her are dismissed with prejudice.[24]  Defendant Ryan's motion to

dismiss is denied as moot.

## B.   Defendants' Motions to Dismiss for Failure to Exhaust Administrative Remedies

All Defendants move to dismiss on the basis that Plaintiff did not exhaust his

administrative remedies before initiating this lawsuit.  Before turning to the parties' substantive

arguments regarding exhaustion, the Court briefly addresses two related motions—Defendants'

motion to strike Plaintiff's surreply and Plaintiff's motion to exclude evidence.

### 1.   Defendants' Motion to Strike Plaintiff's Surreply

Defendants Corby, McGonnigil, Tucker, Hayes, and Simonis move to strike Plaintiff's

surreply to their reply as improper under the local rules.[25]  Plaintiff also filed a surreply to

---

[23] Doc. 39 at 1.

[24] *See* Fed. R. Civ. P. 41(a)(2) ("[A]n action may be dismissed at the Plaintiff's request . . . by court order, on terms that the Court considers proper.")  In a separate filing, titled "Motion in Response to Document 36," Plaintiff again requests that Defendant Ryan be dismissed from this case, but disputes her arguments regarding his failure to exhaust administrative remedies.  Doc. 42 at 1−2.  A dismissal for failure to exhaust administrative remedies should ordinarily be without prejudice.  *See Thompson v. Coulter*, 680 F. App'x 707, 712 (10th Cir. 2017) (citation omitted).  However, because Plaintiff concedes that Defendant Ryan's conduct does not rise to the level of deliberate indifference, Plaintiff's claims against her are dismissed with prejudice for failure to state a claim.  *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.") (citation omitted)).

[25] Doc. 58 (Plaintiff's surreply); Doc. 59 (motion to strike).

Defendant Stopp's reply in support of his motion to dismiss, which Defendant Stopp has not moved to strike.[26]  Defendants are correct that a surreply is not authorized.  Under D. Kan. Rule 7.1(c), parties are permitted to file a dispositive motion, a response, and a reply.  "[S]ur-replies are not ordinarily allowed by the Court."[27]  They are only permitted in rare cases, such as "where the movant improperly raises new arguments in a reply," and only by leave of the Court.[28]

Here, Plaintiff did not seek permission before filing his surreply.  However, he explains that he filed it to address new evidence and arguments raised for the first time in Defendants' replies, specifically Defendants' attachment of and argument regarding Inmate Grievance Procedures and Inmates Handbooks in effect at the SCADF.  Plaintiff is correct that Defendants provided these documents for the first time in their replies.[29]  Considering that fact, and in light of Plaintiff's *pro se* status, the Court denies Defendants' motion to strike.

### 2.      Plaintiff's Motion to Exclude Evidence

Plaintiff has filed a motion to exclude evidence, asking the Court not to consider certain documents Defendants offer to show that Plaintiff had administrative remedies available that he failed to exhaust before bringing suit.[30]  Plaintiff argues that these documents were not, in fact, available to him, and that they "have a probative value that is outweighed by a danger of unfair prejudice, confusing the issues, misleading the court, and causing undue delay."[31]  As set forth below, the Court denies Defendants' motions to dismiss to the extent they are premised on

---

[26] Doc. 53.

[27] *Metzger v. City of Leawood*, 144 F. Supp. 2d 1225, 1266 (D. Kan. 2001).

[28] *Humphries v. Williams Nat. Gas Co.*, No. 96-4196-SAC, 1998 WL 982903, at *1 (D. Kan. Sept. 23, 1998) (quoting *E.E.O.C. v. Int'l Paper Co.*, No. 91-2017-L, 1992 WL 370850, at *10 (D. Kan. Oct. 28, 1992)); *Taylor v. Sebelius*, 350 F. Supp. 2d 888, 900 (D. Kan. 2004) (citation omitted).

[29] The reply filed by Defendants Corby, McGonnigil, Tucker, Hayes, and Simonis references the Inmate Grievance Procedures and Inmates Handbooks provided by Defendant Stopp in his reply.

[30] Doc. 51.

[31] *Id.* at 1.

Plaintiff's failure to exhaust his administrative remedies before filing suit.  Thus, Plaintiff's motion to exclude evidence is denied as moot.

### 3.    Exhaustion of Administrative Remedies

Under PLRA, an inmate must exhaust his administrative remedies before filing suit under § 1983.[32]  This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[33]  An "inmate may only exhaust by properly following all of the steps laid out in the prison system's grievance procedure."[34]  Even if the inmate begins the grievance procedure, if he does not complete it, he is barred from pursuing relief under § 1983.[35]

The exhaustion requirement is not left to the district court's discretion but rather is mandatory, with one qualifier—the administrative "remedies must indeed be 'available' to the prisoner.'"[36]  "Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy unavailable and a court will excuse the prisoner's failure to exhaust."[37]  For example, while a grievance procedure "need not be sufficiently 'plain' as to preclude any reasonable mistake or debate with respect to [its] meaning,"[38] an inmate's duty to exhaust may be excused where "a remedy is . . . essentially

---

[32] 42 U.S.C. § 1997e(a).

[33] *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted).

[34] *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)); *see Lindsey v. Cook*, No. 5:19-cv-03094-HLT, 2021 WL 483855, at *2 (D. Kan. Feb. 4, 2021) (stating that the exhaustion process requires "complying with 'an agency's deadlines and other critical procedures'" (quoting *Gray v. Sorrels*, 818 F. App'x 787, 789 (10th Cir. 2020))).

[35] *Little*, 607 F.3d at 1249 (quoting *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002)).

[36] *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016).

[37] *Lindsey*, 2021 WL 483855, at *2 (quoting *Gray*, 818 F. App'x at 789); *see Little*, 607 F.3d at 1250.

[38] *Ross*, 136 S. Ct. at 1859 (citations omitted).

'unknowable'—so that no ordinary prisoner can make sense of what it demands."[39]  While an inmate's failure to exhaust does not deprive the court of jurisdiction, as certain Defendants contend, "unexhausted claims cannot be brought in court"[40] and the court "must dismiss any unexhausted claims, though dismissal without prejudice is usually preferable."[41]

Finally, the exhaustion requirement is an affirmative defense under the PLRA.[42]  While Kansas law requires that an inmate file proof that he has exhausted his administrative remedies with a petition alleging *state-law* claims,[43] the PLRA does not require an inmate to plead or demonstrate exhaustion in his complaint when bringing *federal* claims.[44]  Rather, "the burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant."[45]  This means that the defendant carries the burden to prove both that administrative remedies were available and that the plaintiff failed to exhaust those remedies.[46]

Defendants offer several documents to establish that Plaintiff had remedies available to him that he failed to exhaust, including copies of the Inmate Grievance Procedures and Inmate Handbooks in effect at the SCADF at various times within the period at issue.[47]  Plaintiff does not contend that he completed all of the steps set forth in the Inmate Grievance Procedures.

---

[39] *Id.* (first citing *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1323 (11th Cir. 2007), and then citing *Turner v. Burnside*, 541 F.3d 1077, 1084 (11th Cir. 2008)).

[40] *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)).

[41] *Kenney v. Dep't of Corrs.*, No. 18-728 MV/SCY, 2020 WL 3496859, at *5 (D.N.M. June 29, 2020) (citing *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009)).

[42] *Jones*, 549 U.S. at 216; *Roberts v. Barreras*, 484 F.3d 1236, 1240−41 (10th Cir. 2007).

[43] K.S.A. § 75-52,138.

[44] *Jones*, 549 U.S. at 216; *Sperry v. McKune*, 384 P.3d 1003, 1012−13 (Kan. 2106) (holding that only state-law claims are impacted by K.S.A. § 75-52,138's pleading requirement).

[45] *Roberts*, 484 F.3d at 1241.

[46] *See McKeighan v. Corrs. Corp. of Am.*, No. 08-3173-SAC, 2010 WL 446503, at *5 (D. Kan. Feb. 4, 2010) (stating that defendants must show not only that administrative remedies existed, but that they were "actually available to plaintiff"); *Iverson v. Bell*, No. 16-3102-JTM, 2017 WL 4422646, at *2 (D. Kan. Oct. 5, 2017) (citing *Lewis v. Carrell*, No. 12-CV-3112-DDC-JPO, 2014 WL 4450147, at *10 (D. Kan. Sept. 10, 2014)).

[47] Doc. 48, Exs. 1−4.

Rather, he argues that inmates at the SCADF are not made aware of or given access to the grievance procedures, and submits affidavits in which he states that the only document he had available to him was a version of the Inmate Handbook that did not make clear how to pursue a grievance.[48]  Plaintiff also contends that Defendants refused to acknowledge or permit him to pursue his complaints, preventing him from satisfying all steps of the exhaustion process, and that he nonetheless exhausted his administrative remedies in the only way available to him by sending electronic messages to SCADF staff.  Plaintiff provides thirteen pages of messages he exchanged with SCADF staff to support that he tried, but was not permitted, to exhaust his remedies before filing suit.[49]

As explained above, Plaintiff's alleged failure to exhaust is not jurisdictional and therefore the Court must construe Defendants' motions to dismiss on that basis under Rule 12(b)(6) for failure to state a claim.  When the parties rely on matters from outside the pleadings on a Rule 12(b)(6) motion—as they do in this case—the Court would ordinarily notify them that it intends to treat the motion as one for summary judgment and give all parties "a reasonable opportunity to present all the material that is pertinent to the motion" as required by Fed. R. Civ. P. 12(d).[50]  This case, however, presents unique challenges due to Defendants' apparent mistaken belief (1) that failure to exhaust deprives the Court of subject matter jurisdiction and that a motion to dismiss on that basis should therefore be brought under Rule 12(b)(1), which in certain circumstances permits the Court to consider matters outside the pleadings, rather than Rule

---

[48] Doc. 51 at 3−7.

[49] Doc. 43-1 at 1−13.

[50] Fed. R. Civ. P. 12(d); *see Burnham v. Humphrey Hospitality Reit Tr., Inc.*, 403 F.3d 709, 713 (10th Cir. 2005) (first citing *Lamb v. Rizzo*, 391 F.3d 1133, 1136 (10th Cir. 2004), and then citing *Nichols v. United States*, 796 F.2d 361, 364 (10th Cir. 1986)).

12(b)(6), which does not;[51] and/or (2) that Plaintiff bears the burden of pleading and proving exhaustion.

While Defendants assert that it is not their "obligation to search through pleadings other than the operative complaint searching for plaintiff's arguments or exhibits,"[52] this contention misconstrues the law.  As set forth above, Plaintiff was not required to plead or demonstrate exhaustion in his Amended Complaint.  Rather, it is Defendants' burden to assert and prove their affirmative defense that Plaintiff had remedies available to him that he failed to exhaust before bringing suit.[53]  The Court denies Defendants' motions to dismiss for failure to exhaust without prejudice, and declines to convert them into motions for summary judgment.[54]

### C.   Motion to Dismiss for Failure to State a Claim by Defendants Corby, McGonnigil, Tucker, Hayes, and Simonis

Defendants Corby, McGonnigil, Tucker, Hayes, and Simonis move to dismiss for failure to state a claim on two grounds.  First, they argue that most of Plaintiff's claims sound in vicarious liability and therefore do not "rise to a violation of 42 U.S.C. §1983."[55]  Second, Defendants seek dismissal on the basis of qualified immunity.  The Court discusses each argument in turn.

---

[51] A factual attack on subject matter jurisdiction under Rule 12(b)(1) goes beyond the complaint's allegations and challenges "the facts upon which subject matter jurisdiction depends."  *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). When reviewing a factual attack, "[a] court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)."  *Id.* (citations omitted)).

[52] Doc. 48 at 2; *see also* Doc. 46 at 3 ("Plaintiff has failed to state what, if any, administrative remedies he attempted to pursue prior to the filing of this action.").

[53] *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007); *see also, e.g., Lindsey v. Cook*, No. 5:19-cv-03094-HLT, 2021 WL 483855, at *2 (D. Kan. Feb. 4, 2021) (finding failure to exhaust where defendant supported argument with "affidavits from personnel . . . attest[ing] that they reviewed Plaintiff's grievance records and that he did not submit any grievances to either the warden or secretary of corrections.").

[54] *See Pool v. County of Otero*, 271 F.3d 955, 957 n.2 (10th Cir. 2010) (stating that district court has discretion to decide whether to convert a motion to dismiss into motion for summary judgment) (citation omitted), *abrogated on other grounds by Hartman v. Moore*, 547 U.S. 250 (2006).

[55] Doc. 46 at 4.

### 1.    Supervisory Liability

To impose liability under § 1983 on a defendant-supervisor not directly involved in an incident, the plaintiff must "plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well."[56]  For example, "[a] defendant supervisor's promulgation, creation, implementation, or utilization of a policy that caused a deprivation of [the] plaintiff's rights could . . . constitute[] sufficient personal involvement."[57]  Alternatively, a defendant supervisor may be liable if he fails to supervise subordinates, thereby resulting in constitutional harm to the plaintiff.[58]

The Court is not persuaded that the dismissal of Plaintiff's claims is warranted on the basis of Defendants' vicarious-liability argument.  Defendants fail to develop or support this argument with respect to any particular Defendant, and Plaintiff has alleged the presence and personal involvement of each of the supervisory Defendants during the events of April 19, 2020.

However, the Court does find that Counts II and IV are duplicative as to Defendants Tucker and Hayes.  Count II is titled "Failure to Protect," and alleges that Tucker and Hayes, among others, were present but failed to intervene to prevent Plaintiff from being subjected to excessive force.  While Count IV is titled "Supervisory Liability – Excessive Force" and asserted only against Defendants Tucker and Hayes, it is based on the same factual allegations about Tucker and Hayes being present during the events in question and failing to protect or

---

[56] *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010); *see also Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) ("[T]he three elements required to establish a successful § 1983 claim against a defendant based on his or her supervisory responsibilities [are]: (1) personal involvement; (2) causation[;] and (3) state of mind.").

[57] *Sigg v. Allen Cnty.*, Nos. 15-CV-01007-EFM, 15-CV-01012-EFM, 2016 WL 6716085, at *8 (D. Kan. Nov. 15, 2016) (quoting *Dodds*, 614 F.3d at 1195); *see also Burke v. Regaldo*, 935 F.3d 960, 997 (10th Cir. 2019) (citations omitted).

[58] *Sigg*, 2016 WL 2016 WL 6716085, at *8 (citing *Dodds*, 614 F.3d at 1195).

intervene.[59]   Count IV is not based on any policy promulgated by these Defendants or other

failure to supervise (beyond their failure to protect or intervene on April 20, 2019) that caused a

deprivation of rights.   Thus, Count IV is dismissed as duplicative of Count II.

### 2.   Qualified Immunity

"Qualified immunity gives government officials breathing room to make reasonable but

mistaken judgments about open legal questions."[60]   To this end, qualified immunity shields

government officials from liability for money damages unless the plaintiff pleads sufficient facts

showing that the official violated a federal statutory or constitutional right, and that the right the

official violated was "clearly established" at the time of the challenged conduct.[61]   Generally, for

a right to be considered clearly established, "there must be a Supreme Court or Tenth Circuit

decision on point, or the clearly established weight of authority from other courts must have

found the law to be as the plaintiff maintains."[62]   The Supreme Court "has held that qualified

immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"[63]

"[I]f a reasonable officer might not have known for certain that the conduct was unlawful—then

the officer is immune from liability."[64]

---

[59] *Compare* Doc. 18 at 11 (alleging in Count II that Tucker and Hayes "supervised the force and failed to protect Plaintiffs [sic] rights"), *with id.* at 12 (alleging in Count IV that Tucker and Hayes "saw and heard and participated in the excessive force being used unlawfully on Plaintiff who was handcuffed and subdued and screaming for their help who did nothing").

[60] *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

[61] *Id.* at 735 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Routt v. Howard*, 764 F. App'x 762, 766–67 (10th Cir. 2019).

[62] *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010) (quoting *Zia Tr. Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1155 (10th Cir. 2010)); *see Ullery v. Bradley*, 949 F.3d 1282, 1291 (10th Cir. 2020) (finding right may be established by Supreme Court or Tenth Circuit precedent, or by "'consensus of cases of persuasive authority' from other jurisdictions") (quoting *al-Kidd*, 563 U.S. at 742)).

[63] *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *see also al-Kidd*, 563 U.S. at 743.

[64] *Ziglar*, 137 S. Ct. at 1867.

Qualified immunity is a defense that must be pleaded by the defendant,[65] but once the defendant raises it, "the onus is on the plaintiff to demonstrate '(1) that the official violated a statutory or constitutional right, *and* (2) that the right was "clearly established" *at the time of the challenged conduct*.'"[66]  Unless the plaintiff pleads facts sufficient to establish these elements, the official is entitled to qualified immunity.[67]  Courts have discretion to decide which of the two prongs of the qualified immunity analysis to address first.[68]

"Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity."[69] However, "[a]sserting a qualified immunity defense via Rule 12(b)(6)," as Defendants Corby, McGonnigil, Tucker, Hayes, and Simonis do here, "subjects the defendants to a more challenging standard of review than would apply on summary judgment."[70]  "At the motion to dismiss stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness."[71]

Defendants have raised the qualified immunity defense, and the Court must therefore evaluate whether the facts alleged show the violation of a right that was clearly established at the time in question.[72]  Defendants summarily assert that Plaintiff "has not offered any substantial

---

[65] *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (first citing Fed. R. Civ. P. 8(c), then citing 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §1271 (1969)).

[66] *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019) (quoting *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (citing *Cillo v. City of Greenwood Village*, 739 F.3d 451, 460 (10th Cir. 2013)).

[67] *See al-Kidd*, 563 U.S. at 735.

[68] *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

[69] *Myers v. Brewer*, 773 F. App'x 1032, 1036 (10th Cir. 2019) (quoting *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014)).

[70] *Id.* (citing *Thomas*, 765 F.3d at 1194).

[71] *Id.* (citing *Thomas*, 765 F.3d at 1194).

[72] *Id.* (quoting *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013)).

response to the qualified immunity argument."[73]  On the contrary, Plaintiff's lengthy response specifically and substantively addresses his Fourteenth Amendment rights as applied to the facts of this case.[74]  Mindful of Plaintiff's *pro se* status, and drawing all reasonable inferences in his favor, the Court finds that Plaintiff has alleged facts sufficient to show that the actions of Defendants Corby, McGonnigil, Tucker, Hayes, and Simonis violated his clearly established constitutional rights.

### a.    Excessive Use of Force and Failure to Protect or Intervene

Plaintiff brings excessive-use-of-force claims against Defendants McGonnigil, Tucker, and Hayes, and claims for failure to protect him from excessive force against Defendants McGonnigil, Tucker, Hayes, Simonis, and Corby.  Excessive force claims may arise under the Fourth, Fifth, Eighth, or Fourteenth Amendment, and the standard to be applied depends on where the plaintiff was in the criminal justice system at the time of the challenged conduct.[75] The Fourteenth Amendment "governs any claim of excessive force brought by a 'pretrial detainee.'"[76]  While Plaintiff's Amended Complaint does not state whether he is a convicted inmate or a pretrial detainee, he alleged in his original Complaint that he was a pretrial detainee at the time of the events in question,[77] which is consistent with his assertion in the Amended Complaint that the Fourteenth Amendment applies here.[78]

---

[73] Doc. 56 at 3.

[74] Doc. 52.

[75] *Estate of Booker v. Gomez*, 745 F.3d 405, 418–19 (10th Cir. 2014) (quoting *Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010)).

[76] *Id.* at 419 (quoting *Bell v. Wolfish*, 441 U.S. 520, 536 (1979)) (citing *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)).

[77] Doc. 1 at 9.

[78] *See* Doc. 18 at 11−14.

To determine whether the use of force is excessive under the Fourteenth Amendment, courts "apply an objective standard, which requires that [the plaintiff] 'show only that the force purposely or knowingly used against him was objectively unreasonable.'"[79]

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.[80]

Whether the force used was objectively unreasonable "is to be evaluated, among other criteria, 'from the perspective of a reasonable officer on the scene,' and must defer to the detention facility's policies and practices promulgated to preserve internal order, discipline, and security."[81]  Finally, even when a jail employee does not himself use excessive force, he may be liable for failure to intervene when he "is present at the scene and . . . fails to take reasonable steps to protect the victim of another officer's use of excessive force."[82]  "[I]n order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring."[83]

---

[79] *Routt v. Howard*, 764 F. App'x 762, 766 (10th Cir. 2019) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 396−97 (2015)).

[80] *Kingsley*, 576 U.S. at 397 (citing *Graham*, 490 U.S. at 396); *see Abila v. Funk*, 220 F. Supp. 3d 1121, 1150−51 (D.N.M. 2016) (stating that "a pretrial detainee can prevail by showing that jailor's actions were not rationally related to a legitimate non-punitive governmental purpose, or that the actions appear excessive in relation to that purpose").

[81] *Routt*, 764 F. App'x at 766 (quoting *Kingsley*, 576 U.S. at 397).

[82] *Mascorro v. Billings*, 656 F.3d 1198, 1204 n.5 (10th Cir. 2011) (citing *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996)); *see also Estate of Booker*, 745 F.3d at 421 (stating that the Tenth Circuit has "denied qualified immunity when an officer failed to prevent others from using excessive force even though the officer himself did not engage in excessive force." (citations omitted)).

[83] *Estate of Strong v. City of Northglenn*, No. 19-cv-1276-WJM-MEH, 2018 WL 1640251, at *4 (D. Colo. Apr. 5, 2018) (quoting *Vondrak v. City of Las Cruces*, 55 F.3d 1198, 1210 (10th Cir. 2008), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009)) (citing *Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009)).

The Court finds that Plaintiff has alleged facts sufficient to show that Defendants McGonnigil, Tucker, Hayes, Simonis, and Corby either subjected him to, or failed to protect him from, objectively unreasonable force in violation of the Fourteenth Amendment, and that Plaintiff's right to be free from the use of such force—and a bystander officer's duty to take reasonable steps to intervene to protect a pretrial detainee from such force—were clearly established at the time in question.

As to Defendant McGonnigil, Plaintiff alleges, among other things, that he repeatedly kicked Plaintiff's knee out while Plaintiff was being led down a staircase in handcuffs, causing Plaintiff to fall and hit the steps multiple times and resulting in injuries so serious that Plaintiff could not walk or stand and required a wheelchair.  Plaintiff alleges that Defendants Tucker and Simonis witnessed these events but failed to intervene—Tucker was supervising the officers and giving verbal instructions, but neither he nor Simonis did anything to stop McGonnigil's behavior and both Defendants ignored Plaintiff's screams for help.

Plaintiff also alleges that McGonnigil and Simonis lifted Plaintiff by his ankles and handcuffed wrists and dropped him to the floor of his cell from a height of four feet, and then struck him in the ribs, neck, and back with their knees.[84]  Plaintiff alleges that Defendants Tucker, Hayes, and Corby were present during this additional act of violence, but did not intervene.  Thus, Plaintiff has alleged specific acts of force by specified officers, and the failure to intervene despite a reasonable opportunity to do so by the remaining officers.

In a similar case decided before the events in question, in which an inmate was caused to fall onto stairs headfirst while handcuffed, the Tenth Circuit held that when a plaintiff is "allegedly . . . thrown or caused to fall, either onto the floor or stairs," such conduct amounts to

---

[84] Although Plaintiff alleges that Defendant Simonis was directly involved in the use of excessive force against him, Plaintiff brings claims against him only for failure to protect and deliberate indifference to Plaintiff's serious medical needs. *See* Doc. 18 at 11−13.

an unlawful, excessive use of force, and that "clearly established law made it clear [that such] alleged conduct was unlawful."[85]  The law has long been clearly established that an officer "who fails to intervene to prevent another law enforcement officer's use of excessive force may be liable under §1983."[86]  On the totality of the facts and circumstances alleged, the Court cannot find that Defendants are entitled to qualified immunity at the pleading stage, and their motion to dismiss is denied as to Plaintiff's excessive force and failure-to-protect claims.

###    b.    Deliberate Indifference to Serious Medical Needs

"Under the Fourteenth Amendment's due process clause, pretrial detainees . . . are entitled to the same degree of protection regarding medical attention as that afforded convicted inmates under the Eighth Amendment."[87]  In either type of case, claims of "inadequate medical attention . . . must be judged against the 'deliberate indifference to serious medical needs' test of *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, L.Ed.2d 251 (1976)."[88]

"'Deliberate indifference' involves both an objective and a subjective component."[89]  The objective component is met if the deprivation is 'sufficiently serious.'"[90]  "A medical need is

---

[85] *Ali v. Duboise*, 763 F. App'x 645, 648, 651 (10th Cir. 2019) (discussing *Wilkins v. Gaddy*, 559 U.S. 34, 35−37 (2010)); *see also Hudson v. McMillian*, 503 U.S. 1, 4, 9 (1992) (stating, in case where guard punched inmate in the mouth, eyes, chest, and stomach, that "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated" (citing *Whitley v. Albers*, 475 U.S. 312, 327 (1986))); *Nosewicz v. Janosko*, 754 F. App'x 725, 734−35 (10th Cir. 2018) (finding question of material fact as to reasonableness of officer's conduct when he slammed detainee's head into a wall and punched him hard enough to break his ribs, despite the fact that plaintiff was "irate and disruptive" and posed a potential threat to jail staff); *Lowe v. Sockey*, 36 F. App'x 353, 357−58 (10th Cir. 2002) (plaintiff beaten while restrained); *Mitchell v. Maynard*, 80 F.3d 1433, 1439, 1440−41 (10th Cir. 1996) (inmate kicked and stomped on while on the ground).

[86] *Mick*, 76 F.3d at 1136 (collecting cases); *see Laury v. Greenfield*, 87 F. Supp. 2d 1210, 1216 (D. Kan. 2000) ("Prison guards who observe the imposition of excessive force upon a prisoner at the hands of another guard but who take no steps to protect the prisoner violate the Eighth Amendment." (citations omitted)).

[87] *Frohmader v. Wayne*, 958 F.2d 1024, 1028 (10th Cir. 1992) (citing *Martin v. Bd. of Cnty. Comm'rs of Cnty. of Pueblo*, 909 F.2d 402, 406 (10th Cir. 1990)); *see also Burke v. Regalado*, 935 F.3d 960, 991 (10th Cir. 2019) (citations omitted).

[88] *Frohmader*, 958 F.2d at 1028 (citing *Martin*, 909 F.2d at 406).

[89] *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).  In *Kingsley v. Hendrickson*, "the Supreme Court held that the Eighth Amendment standard for excessive force claims brought by prisoners, which requires that defendants act 'maliciously and sadistically to cause harm,' does not apply to Fourteenth Amendment excessive

sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or

one that is so obvious that even a lay person would easily recognize the necessity for a doctor's

attention.'"[91]  The objective component must be evaluated by the actual harm suffered, not by

symptoms perceived by the defendant.[92]  "The subjective component is met if a prison official

'knows of and disregards an excessive risk to inmate health or safety.'"[93]  One type of conduct

that may constitute deliberate indifference is the failure to treat a serious medical condition

properly, while a second is preventing an inmate from receiving treatment or denying him access

to qualified medical personnel.[94]  Finally, a delay in providing medical care does not amount to a

violation of the detainee's rights "unless the delay caused substantial harm by further injuring the

inmate."[95]  "Substantial harm is a 'lifelong handicap, permanent loss, or considerable pain.'"[96]

Plaintiff alleges that Defendants McGonnigil, Tucker, Hayes, and Simonis denied him

access to medical care after McGonnigil caused him to fall onto the stairs, resulting in back

---

force claims brought by pretrial detainees." *Estate of Vallina v. Cnty. of Teller Sheriff's Office*, 757 F. App'x 643, 646 (10th Cir. 2018) (citing *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015)).  "Accordingly, a pretrial detainee need only show that the officer's use of force was 'objectively unreasonable.'" *Id.* (citation omitted). Although the circuits are split, the Tenth Circuit has expressly declined to extend *Kingsley* to Fourteenth Amendment deliberate indifference claims.  *See Hooks v. Atoki*, 983 F.3d 1193, 1203–04 (10th Cir. 2020), *petition for cert. docketed*, — U.S. — (Mar. 8, 2021); *Strain v. Regaldo*, 977 F.3d 984, 990–93 & n.4 (10th Cir. 2020), *petition for cert. docketed*, — U.S. — (May 11, 2021).  Thus, in the Tenth Circuit, the test for such claims continues to involve both an objective and a subjective component.

[90] *Sealock*, 218 F.3d at 1209 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

[91] *Id.* (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)); *see also Heidtke v. Corrs. Corp. of Am.*, 489 F. App'x 275, 282 (10th Cir. 2012) (stating that medical need is obvious if a "reasonable man," rather than a trained physician, would realize it) (quoting *Farmer*, 511 U.S. at 842).

[92] *See Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005) (stating that symptoms displayed are only relevant to the subjective component of the deliberate indifference test).

[93]*Id*. at 751 (citing *Farmer*, 511 U.S. at 837).

[94] *See Sealock*, 218 F.3d at 1211 (citations omitted).

[95]*Rivera v. Leaming*, No. 99-3067-JWL, 2000 WL 382035, at *7 (D. Kan. Apr. 5, 2000) (first citing *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993), and then citing *Grant v. Bernalillo Cnty. Det. Ctr.*, No. 98-2193, 1999 WL 157415, at *3 (10th Cir. Mar. 23, 1999)); *see Cullen v. Sheppard*, No. 07-3218-SAC, 2007 WL 2804914, at *1 (D. Kan. Sept. 25, 2007) (citation omitted).

[96]*Cullen*, 2007 WL 2804914, at *1 (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

fractures, broken medical hardware in Plaintiff's body, and Plaintiff's inability to stand or walk. Plaintiff alleges that although he was taken to the medical clinic, Tucker refused to let him answer assessment questions and he was unable to see a doctor. Plaintiff alleges that while he was being returned to his cell after visiting the clinic, he screamed for McGonnigil, Tucker, Hayes, and Simonis to provide him access to a doctor, to no avail. Plaintiff also alleges that he continued to scream for help once in his cell, where he was further abused by McGonnigil and Simonis, and that these events were witnessed by all of the foregoing Defendants plus Defendant Corby. Finally, Plaintiff alleges that he was locked in his cell for four days after these events, and that he did not see Defendant Stopp for weeks afterward.

As to the objective component of his deliberate indifference claim, the Court finds that Plaintiff's alleged injury—"fractured areas in [his] back" and damage to hardware implanted in his body—was so obvious that even a lay person would easily recognize the necessity for medical treatment, and therefore sufficiently serious. Further, construing the facts in the light most favorable to Plaintiff, he experienced significant further pain while being denied treatment, which in itself may be sufficient to satisfy the objective prong of the inquiry.[97]

As to the subjective component, the Court finds that Defendants knew of and disregarded an excessive risk to Plaintiff's health or safety when they denied him medical care on April 19, 2020, and for at least four days (and possibly weeks) afterward. These Defendants were present when Plaintiff—who was housed in an ADA cell at the time of the events in question due to serious pre-existing medical conditions—was injured through violence, and Defendants

---

[97] *See Al-Turki v. Robinson*, 762 F.3d 1188, 1193 (10th Cir. 2014) ("[T]he 'substantial harm' caused by a delay in treatment may be a permanent physical injury, or it may be 'an intermediate injury, such as the pain experienced while waiting for treatment and analgesics.'") (citation omitted)); *Kikumura v. Osagie*, 461 F.3d 1269, 1293 (10th Cir. 2006) (holding that "tortuous pain" resulting from delay in medical care, along with physical injuries, was enough to meet objective component of deliberate indifference claim), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007); *Sealock*, 218 F.3d at 1210 (holding that delay in treating chest pain amounted to substantial harm).

witnessed Plaintiff's inability to stand or walk afterward, his need for a wheelchair, and his repeated screams for a doctor indicating that he was in pain.  "Deliberate indifference to serious medical needs may be 'manifested . . . by prison guards . . . intentionally denying or delaying access to medical care."[98]  Plaintiff has alleged sufficient facts that demonstrate Defendants' subjective intent to deprive him of medical care and their knowledge that doing so would cause a significant risk to his health or safety.

At the second step in the qualified immunity analysis, the Court finds that clearly established law at the time of the events in question put Defendants on notice of the unconstitutionality of their actions.  The Tenth Circuit has long observed that "there is little doubt that deliberate indifference to an inmate's serious medical need [violates] a clearly established constitutional right."[99]  Given the facts alleged—that Plaintiff was unable to stand or walk and was screaming in pain after being kicked and made to fall forward onto stairs multiple times, after which he was dropped face-first onto the floor of his ADA cell—the Court finds that any reasonable officer in Defendants' position would have understood that he or she was displaying deliberate indifference to a serious medical need by not permitting Plaintiff to receive care.  Again, the Court cannot find that Defendants are entitled to qualified immunity at the pleading stage, and their motion to dismiss is denied as to Plaintiff's claim for deliberate indifference to his serious medical needs.

### D.    Defendant Stopp's Motion to Dismiss for Failure to State a Claim

Regarding Defendant Stopp, Plaintiff appears to argue that he is liable both for failing to treat Plaintiff's injury and for failing to fulfill his gatekeeper role by sending Plaintiff to an

---

[98] *Nosewicz v. Janosko*, 754 F. App'x 725, 729 (10th Cir, 2018) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104−05 (1976)).

[99] *Estate of Booker v. Gomez*, 745 F.3d 405, 433 (10th Cir. 2014) (alteration in original) (quoting *Mata v. Saiz*, 427 F.3d 745, 749 (10th Cir. 2005)).

outside physician capable of treating his injury.  Defendant Stopp argues that Plaintiff's

allegations are insufficient to establish deliberate indifference under either theory, and that

Plaintiff therefore fails to state a claim against him on which relief can be granted.[100]  For the

same reasons set forth above, Plaintiff has satisfied the objective component of a deliberate

indifference claim against Defendant Stopp.  However, the Court finds Plaintiff's allegations

insufficient to satisfy the subjective component with regard to his claim against Defendant Stopp.

> Plaintiff's allegations regarding Defendant Stopp consist of the following:

>> I wasn't seen by Dr. Stopp for weeks [after the April 20, 2019
>> incident].  Dr. Stopp . . . knew of my injury on 5/31/19 but lied to
>> me and continued seeing me as if I didn't have fractured areas in
>> my back.  For nearly 6 months I was lied to about my injury before
>> I was finally sent to a doctor.  My care ended there despite my
>> continued efforts at getting care for my injury.  This has left me in
>> the physical pain I'm in still.

>> Dr. Stopp . . . knew of my injury to my back on 5-31-19 and
>> continued seeing me for nearly six months like nothing was wrong
>> and lied to me when I confronted [him].  Every single time I went
>> back to Dr. Stopp . . . to get medical care for my injury they put
>> orders in for images of every other area other than the area of the
>> injury to avoid it.  This deliberate indifference violated Plaintiffs
>> [sic] Fourteenth Amendment.[101]

> Nothing in the foregoing allegations supports that Defendant Stopp knew of Plaintiff's

injury before May 31, 2019 and disregarded a risk to Plaintiff's health or safety by not providing

treatment before that date.  Nor does Plaintiff allege that Defendant Stopp did not provide any

treatment to Plaintiff after that date.  Rather, Plaintiff alleges that Defendant Stopp did see him

multiple times and repeatedly ordered imaging.  The Court finds that Plaintiff's conclusory

allegation that Defendant Stopp lied to him about his injury, and intentionally ordered x-rays of

the wrong body parts to avoid confirming a particular injury, lacks sufficient factual support to

---

[100] Defendant Stopp does not raise the defense of qualified immunity.

[101] Doc. 18 at 10, 13.

raise his right to relief above the speculative level.[102]  Notably, Plaintiff does not allege what imaging he received while under Defendant Stopp's care, what other treatment Defendant Stopp provided or failed to provide, what different course of treatment Plaintiff obtained after he was referred to an outside physician, or what injury, if any, that physician ultimately diagnosed.[103]

"The subjective component [of the deliberate indifference inquiry] is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment."[104]  And "the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment."[105]  Plaintiff has failed to allege facts to plausibly support that his claim against Defendant Stopp is something other than "a layperson's disagreement with the scope and adequacy of the medical treatment provided by a medical professional."[106]

Nor can the Court find that Plaintiff's Amended Complaint supports that Stopp failed to fulfill his gatekeeper role.

> Ordinarily, a medical professional will not be liable for [denying access to qualified medical personnel], because he is the person who provides the treatment.  If, however the medical professional

---

[102] *See, e.g., Rohan v. Saline Cnty. Jail*, No. 5:19-cv-03068-HLT, 2019 WL 4930254, at *4 (D. Kan. Oct. 7, 2019) (finding subjective prong of deliberate indifference test unmet where plaintiff's allegations were "exceedingly general and vague").  Plaintiff's factual allegations regarding Defendant Stopp are identical to his allegations regarding Defendant Ryan, whom he concedes should be dismissed from this case.

[103] Although Plaintiff expands upon his allegations against Defendant Stopp in his briefing, the Court's review on a Rule 12(b)(6) motion is limited to the allegations of Plaintiff's Amended Complaint as set forth above. Further, the Court does not consider copies of x-rays and radiology reports attached to Plaintiff's response, other than to note that none of these medical records mention Defendant Stopp.  *See* Doc. 43-1 at 14–17; Doc. 52 at 32–34.

[104] *Salary v. Goff*, 572 F. App'x 668, 670 (10th Cir. 2014) (quoting *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006)); *see Self*, 439 F.3d at 1230 ("'[I]nadvertent failure to provide medical care' is not enough, nor does 'a complaint that a physician has been negligent in diagnosing or treating a medical condition . . . state a valid claim of medical mistreatment.'") (quoting *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976))); *Rohan*, 2019 WL 4930254, at *4 (stating that "[a] difference of opinion with medical staff about treatment is not actionable" (quoting *Toler v. Troutt*, 631 F. App'x 545, 547 (10th Cir. 2015)) (citing *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992))).

[105] *Estelle*, 429 U.S. at 107; *see Heidtke v. Corrs. Corp. of Am.*, 489 F. App'x 275, 280 (10th Cir. 2012)

[106] *Kneen v. Zavaras*, 568 F. App'x 580, 585 (10th Cir. 2014) (citations omitted).

> knows that his role in a particular medical emergency is solely to
> serve as a gatekeeper for other medical personnel capable of
> treating the condition, and if he delays or refuses to fulfill that
> gatekeeper role due to deliberate indifference, it stands to reason
> that he also may be liable for deliberate indifference from denying
> access to medical care.[107]

Plaintiff has not alleged fact sufficient to show that Defendant Stopp was "solely to serve as a

gatekeeper for other medical personnel capable of treating the condition" in a case of

emergency.[108]  Rather, Plaintiff alleges that Stopp treated him for six months and then eventually

referred him to another physician.  Although the Court construes Plaintiff's allegations liberally

due to his *pro se* status, Plaintiff still must "allege sufficient facts about material events to

preclude the need for speculation by the court as to whether such facts exist."[109]  Plaintiff's

Amended Complaint lacks factual content to support that Defendant Stopp acted with deliberate

indifference in treating or failing to treat Plaintiff's alleged injury or by denying Plaintiff access

to medical care.  Defendant Stopp's motion to dismiss is therefore granted.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion to Dismiss

Defendant Ryan from this action (Doc. 39) is **granted**, and Defendant Ryan's Motion to Dismiss

Plaintiff's Amended Complaint (Doc. 36) is **denied as moot**.  The Motion to Strike Plaintiff's

Surreply filed by Defendants Corby, Hayes, McGonnigil, Simonis, and Tucker (Doc. 59) is

**denied**, and Plaintiff's Motion to Exclude Evidence (Doc. 51) is **denied as moot**.  The Motion to

Dismiss filed by Defendants Corby, McGonnigil, Tucker, Hayes, and Simonis (Doc. 40) is

---

[107] *See Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000).

[108] *Id.* at 1211.

[109] *Stevenson v. Smith*, Nos. 91-3384, 92-3002, 1992 WL 362916, at *4 (10th Cir. Nov. 18, 1992) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)); *see Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (stating that while a "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable," a complaint is subject to dismissal when it is not "frame[d] . . . 'with enough factual matter (taken as true) to suggest' that [plaintiff] is entitled to relief") (citations omitted)).

**denied**, but Count IV of Plaintiff's Amended Complained is **dismissed** as duplicative of Count

II. Finally, Defendant Stopp's Motion to Dismiss (Doc. 30) is **granted**.

      **IT IS SO ORDERED.**

      <u>Dated: June 2, 2021</u>

                                   <u>S/ Julie A. Robinson</u>
                                   JULIE A. ROBINSON
                                   CHIEF UNITED STATES DISTRICT JUDGE